THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED ABDUBA DIDA, ) <br> Y51285, ) <br> ) <br>      **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> KIMBERLY HVARRE, ) <br> ) <br>      **Defendant.** ) | Case No. 3:24-cv-00238-GCS |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Mohamed Abduba Dida, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Big Muddy River Correctional Center ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that the prison is not providing religiously adequate opportunities to pray or to observe other tenants of his religion.

The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 4) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

By way of background, Plaintiff alleges that at East Moline Correctional Center from April to October 2022, he was denied the ability to pray day and night, and he was only allowed one prayer in the church on Fridays. (Doc. 1, p. 6). At Southwestern Correctional Center from December 2022 to January 2023 he was allowed some prayers but denied others. Eventually, he had discussions with the chaplain and coordinated some additional prayer and religious observance accommodations. However, during one of the agreed upon prayer times, he was handcuffed, taken to another location, and forced to strip and to touch his genitals; he was then transferred to Big Muddy. (Doc. 1, p. 6).

Plaintiff claims that the transfer injured him because he was taken to a medium security facility. He spent a month in segregation, his sentence was increased by the prison, and he was denied a job.

Plaintiff claims that now at Big Muddy he has been approved as a volunteer imam, but he has only been allowed one Friday prayer. (Doc. 1, p. 7). He has otherwise been denied prayers before and after sunrise and sunset, and he has been denied three additional prayers. He complained about these issues and was then removed from the volunteer program and the existing day prayers were relocated from the church to an art room.

Plaintiff states that he now has only one weekly prayer in the church, or he is locked up in his cell on Fridays. He complains that important aspects of his prayers cannot be followed, such as the direction he is supposed to face to pray, the requirement that he wash himself before praying, and the requirement that some prayers should occur at late hours. He admits that he has recently been moved to a single-man cell, which mitigates some of his problems. (Doc. 1, p. 8). Even so, he complains that he needs a full shower on Friday before prayer, but despite many meetings about this, he has been unable to arrange it. (Doc. 1, p. 10). He claims that even a single drop of urine nullifies his prayer, which makes it problematic to pray in a cell where toilets are co-located. (Doc. 1, p. 10).

On January 25, 2024, the chaplain visited his cell to ask if he wanted to participate in Ramadan. (Doc. 1, p. 8). Plaintiff asked if they would be allowed five prayers a day and was told they would get two prayers a day. He refused participation because he worships every day, not just one day a year. (Doc. 1, p. 8). He states that there are two annual celebrations for Muslims to observe. Plaintiff complains that he cannot observe it at a satisfactory time because Big Muddy only offers observance on Sunday in the church. (Doc. 1, p. 9).

As relief, Plaintiff seeks an adequate prayer space where he can conduct five prayers a day, as well as an opportunity to take a shower or full bath before Friday prayers. (Doc. 1, p. 11).

In support of his complaint, he submitted excerpts of religious texts, a chart of prayer times, request forms to the chaplain (some are from 2022 and pre-date his time at

Big Muddy), notes that he alleges he took during a meeting with the chaplain on May 11, 2023, disciplinary and grievance documentation, a memorandum about Ramadan, and a variety of other miscellaneous documents. (Doc. 1-1, 1-2).

Based on the allegations in the Complaint, the Court designates the following claim:

> **Claim 1:** **First Amendment or RLUIPA claim concerning Plaintiff's access to adequate prayer times/facilities, and his ability to observe important religious celebrations.**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

An inmate's right to practice his religion is protected under the First Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-380 (7th Cir. 2016) (citation and internal quotation marks omitted). To sustain a First Amendment claim against an individual prison

employee, an inmate must show that the defendant "personally and unjustifiably placed a substantial burden on his religious practices." *Id.* at 379.

RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not allow money damages against state officials, and instead allows for only injunctive relief. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Here, Plaintiff is not clear whether he intends to present his claims under the First Amendment, or RLUIPA, or both. However, because a First Amendment claim would require him to establish the personal involvement of Defendant Hvarre, the Court finds that Plaintiff's allegations are not sufficient at this juncture to proceed against Hvarre. Plaintiff explains several problems that he has encountered with religious observance at Big Muddy, where he alleges Hvarre is the Warden, but he does not describe Hvarre's own role in the issues. To state a claim under § 1983, an inmate must establish an individual defendant's personal involvement in the alleged constitutional violation. *See Thompson,* 809 F.3d at 379. *See also Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (noting that individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation). Plaintiff fails to state facts linking Hvarre to the issues with his religious observance, so his complaint is insufficient to plead a First Amendment claim.

By contrast, RLUIPA does not authorize suits for monetary damages against defendants in their individual capacities. *See Grayson v. Schuler,* 666 F.3d 450, 451 (7th Cir. 2012). Plaintiff does not seek monetary relief at all, and only seeks injunctive relief, which is the very sort available under RLUIPA. He has successfully alleged at this preliminary juncture that Big Muddy is imposing a burden on his ability to observe his religion by limiting prayer times and spaces, and the observance of religious celebrations. Hvarre is the proper defendant for a claim under RLUIPA for the injunctive relief that Plaintiff seeks. *See, e.g.*, *Weston v. Baldwin*, Case No. 19-cv-01020-NJR, 2019 WL 6468564, at *4 (S.D. Ill. Dec. 2, 2019) (finding that the Warden of Menard was the proper defendant for a RLUIPA claim because he or she would be the one to implement injunctive relief). Accordingly, Plaintiff will be allowed to proceed on his religious observance claim against Hvarre under RLUIPA.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendant Kimberly Hvarre under RLUIPA, but not under the First Amendment.

The Clerk of Court is **DIRECTED** to prepare for Defendant Kimberly Hvarre: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were

sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

Plaintiff's Motion Re Total Filing Fee (Doc. 10) is hereby **DENIED**. Plaintiff has already paid his initial filing fee in this case of $42.80. He asks for the Court to put the fine in this case (and in six other cases recently filed in this District) on hold because the fines are draining his finances, but the Court cannot grant the relief he seeks. The calculation and collection of initial partial filing fees is controlled by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-66. The PLRA provides that the initial fee is 20% of the inmate's account or average monthly balance over the preceding six months, to be followed by monthly installments of 20 percent of the preceding month's income if the inmate has more than $10.00. *See* 28 U.S.C. § 1915(b)(1-4). The Supreme Court held in *Bruce v. Samuels*, 577 U.S. 82, 85 (2016), that if an inmate has more than one fee under the PLRA, the fees must be paid simultaneously on a per-case basis and cannot be instead considered on an aggregate basis. Thus, under the PLRA and *Samuels*, the Court cannot accept Plaintiff's proposed payment plan, and his motion must be denied. Plaintiff has already satisfied the initial partial fee in this case, so he is not in a position where sudden financial liquidity problems will prevent him from proceeding.

**IT IS SO ORDERED.**

DATED: April 15, 2024.

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2024.04.15 14:31:46 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.