THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MOHAMED ABDUBA DIDA, <br> Y51285, <br><br> Plaintiff, <br><br> vs. <br><br> KIMBERLY HVARRE, <br> JEFFREY FERNBERG, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 3:24-cv-00238-GCS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Mohamed Abduba Dida, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Big Muddy River Correctional Center ("Big Muddy"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Specifically, Plaintiff alleges that the prison is not providing adequate opportunities to pray or to observe other tenants of his religion. Upon initial review, the Court dismissed Plaintiff's First Amendment theory for lack of personalized involvement by Defendant Hvarre, but it allowed Plaintiff to proceed against Hvarre on another theory and service of process was initiated. (Doc. 12). Plaintiff has now filed an amended complaint. (Doc. 17). The amended complaint was received within 21 days of the Court issuing service of process, so leave to amend was not needed.

The Amended Complaint (Doc. 17) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff restates background information about his religious exercise during his incarceration at other facilities prior to his transfer to Big Muddy. (Doc. 17, p. 6-9). In the Amended Complaint, he provides more detail about his experiences at other facilities and includes a more in-depth discussion about issues such as an alleged increase in his mandatory supervised release date that coincided with his transfer to Big Muddy. However, he does not formally name anyone from the other facilities as a defendant in this case, and his demand for relief does not include anything about his mandatory supervised release date, so this topic will not be elaborated upon further.

Relevant to the original complaint and the operative claim in this case, Plaintiff alleges that he was transferred to Big Muddy around January 16, 2023. (Doc. 17, p. 8). He

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint due to his consent to the full jurisdiction of a magistrate judge (Doc. 4) and the limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the IDOC, Wexford, and this Court.

was placed in segregation for a month upon arrival, was denied a job, and was denied access to education that had previously been approved. (Doc. 17, p. 10). On January 18, 2024, he sought a meeting with Defendant Jeffrey Fernberg, the Chaplain at Big Muddy.[2] He informed Fernberg of his religious background and his desire to observe his religion and to volunteer in a religious capacity at Big Muddy. (Doc. 17, p. 10-11). He requested five daily prayers, the facilitation of "David's program," showers on Fridays before prayer, special Ramadan prayers, and weekly Friday prayers in the art room. Fernberg asked Plaintiff to make written requests for a few things, and he approved his participation in a teaching program. Plaintiff alleges that with his participation, the number of inmates at the prison that participated in Islamic programs increased. Inmates were allowed 3 prayers in the art room per day during Ramadan. (Doc. 17, p. 11-12).

Defendant Fernberg assured Plaintiff that he was communicating with Defendant Kimberly Hvarre (the Warden) about a prayer space for five prayers a day, and for two hours of teaching a week. (Doc. 17, p. 12). He asked Plaintiff to write Hvarre about the teaching and to ask for a regular prayer space, and Plaintiff did so. Plaintiff had also informed Fernberg multiple times before Ramadan that there were certain special practices that should be arranged for Ramadan, including snacks and soda before 8:00 am prayers, outdoor special prayers, video watching, and more. Fernberg assured Plaintiff that he was in communication with Hvarre about these issues. (Doc. 17, p. 13).

---

[2]     Plaintiff wrote in his complaint that he requested this meeting in January of 2024, but read in context, it makes more sense that this meeting might have occurred in January of 2023. (Doc. 17, p. 10).

Much to Plaintiff's surprise, Hvarre responded that special prayers for Ramadan must be held in the chapel, two prayers would be cancelled, there would be no Friday showers before prayer, and Friday prayer would relocate from the art room to the chapel. (Doc. 17, p. 13). Plaintiff claims he was removed from the Friday prayer list, he was removed from the teaching list, and Fernberg personally told him he was no longer the Imam. (Doc. 17, p. 14). The clinical department called Plaintiff and told him to stop certain teachings, and he was placed in a cell with an atheist. After much protest, Plaintiff was eventually relocated to a single-man-cell. (Doc. 17, p. 15).

Plaintiff claims that following these events, he met with Hvarre on at least three occasions (March of 2023, and twice in May of 2023). He spoke with Hvarre about the need for five daily prayers, the need for teachings, the need for showers before Friday prayer, his desire for access to PhD educational programming, and the discrepancy with his mandatory supervised release date. (Doc. 17, p. 15). Hvarre asked him to write to her restating the issues he raised, and she promised to provide answers. Despite these assurances, Plaintiff never heard from Hvarre about the issues again. On two occasions in May, Plaintiff reminded Hvarre of the issues they had discussed, and she again assured him she would act within a matter of days, but nothing has yet occurred. (Doc. 17, p. 16).

Plaintiff alleges that the Abrahamic celebration occurs on the 10th day of the 12th Islamic month every year. He claims in East Moline he was offered the option of observing it on a Sunday in the chapel, which he felt was inadequate. When he complained to the Warden, he was given the same outcome. Defendant Fernberg prepared a memo for Defendant Hvarre, and all she suggested was a Sunday prayer in

the chapel. (Doc. 17, p. 17). Plaintiff indicates that he cannot observe his religion in the chapel because under the Quran it is improper to worship in a place that contains items associated with other religions. He alleges that Hvarre and Fernberg have created a problem for this tenet of his religion by moving prayer from the art room to the chapel. (Doc. 17, p. 17-18). He claims that when prayer was relocated to the chapel, almost all Muslims left, and he was blamed. He alleges that "many threats followed." (Doc. 17, p. 19).

For Ramadan in 2024, Defendant Fernberg gave Plaintiff the option of 2 prayers in the church plus daybreak and sunset meals in the church. He declined this offering because Ramadan requires five daily prayers and many other activities. (Doc. 17, p. 19). Plaintiff argues that the situation is ironic because others are offered four daily prayers and do not attend, but Muslims are denied their compulsory prayers. (Doc. 17, p. 19). He further claims that Defendant Fernberg provided all Muslims with prayer rugs/mats and a prayer schedule, but beginning on May 1, 2024, an officer began insisting that inmates could not pray in the day room. Inmates are denied early morning prayer, they are denied the use of the prayer mat or rug, and for some reason they are forced to close their doors during the one hour of day room. (Doc. 17, p. 20).

Plaintiff alleges the defendants have knowingly made it hard for him to observe his religion. Ramadan was stressful, he was handcuffed, tortured, and placed in solitary confinement, his mandatory supervised release date was changed, and his only option was to pray in the church in the presence of other religious paraphernalia. (Doc. 17, p. 21).

As relief, Plaintiff seeks an adequate prayer space for five prayers a day, the opportunity to shower before Friday prayers, and the ability to offer learning or teaching after prayers. (Doc. 17, p. 22). In support of his amended complaint, Plaintiff submitted religious texts and other documents relevant to his attempts to observe his religion.

Based on the allegations in the original Complaint, the Court designated a single claim, and the claim will remain the same:

> **Claim 1:** **First Amendment or RLUIPA claim concerning Plaintiff's access to adequate prayer times/facilities, and his ability to observe important religious celebrations.**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

As the Court previously explained in the analysis of Plaintiff's complaint, an inmate's right to practice his religion is protected under the First Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial

pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379-380 (7th Cir. 2016) (citation and internal quotation marks omitted). To sustain a First Amendment claim against an individual prison employee, an inmate must show that the defendant "personally and unjustifiably placed a substantial burden on his religious practices." *Id.* at 379.

RLUIPA offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005). However, RLUIPA does not permit money damages against state officials and instead allows for only injunctive relief. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Plaintiff was previously allowed to proceed against Defendant Hvarre solely under RLUIPA for injunctive relief. One of the reasons for the narrowing of his complaint was because he did not establish the personal involvement of Defendant Hvarre in the issues he described with his religious observation. The Amended Complaint has cured this defect because Plaintiff has now clearly alleged multiple occasions when he directly and indirectly communicated with Hvarre about his religious practice, and she took actions that allegedly impeded his religious observation. Plaintiff still has not included a demand for monetary damages, but such a demand is not essential. He can proceed for injunctive relief under the First Amendment or RLUIPA.

The Court will also now allow Plaintiff to add Defendant Jeffrey Fernberg to Claim 1 for both the First Amendment and RLUIPA. Fernberg is the Chaplain at Big Muddy. Plaintiff has clearly established Fernberg's personal involvement, and Fernberg might be another appropriate prison employee to carry out injunctive relief if it is ultimately granted at the close of this case. Accordingly, Claim 1 may proceed against both Hvarre and Fernberg.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Kimberly Hvarre and Jeffrey Fernberg. Claim 1 now encompasses RLUIPA and the First Amendment theories of relief. Defendant Hvarre has already been served in this action, so further action is not required with respect to Hvarre.

The Clerk of Court is **DIRECTED** to prepare for Defendant Jeffrey Fernberg: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 17), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes. The Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 25, 2024.**

Gilbert C Sison
Digitally signed by Gilbert C Sison
Date: 2024.06.25 12:33:58 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed as a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.